DAVIDSON v. DUNHAM et al.

(Supreme Court, Equity Term, Erie County. February, 1915.)

1. INJUNCTION ☞128—ENFORCEMENT OF RESTRICTIVE COVENANTS—EVIDENCE.

In an action to restrain violation of covenant to use premises for residence purposes only, evidence as to sale, resale, mortgage foreclosures, etc., with and without restrictive covenants, in the same block, all the lots of which were to have been sold with restrictive covenants, *held* to show that the covenants were not mutual, and were unenforceable.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 278; Dec. Dig. ☞128.]

2. COVENANTS ☞51—RESTRICTIVE BUILDING COVENANTS—MUTUALITY.

The validity of restrictive building covenants that lots in a certain block were to be used for residence purposes only depended upon their being mutual.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 50; Dec. Dig. ☞51.]

Action by Walter V. Davidson against Frederic G. Dunham and another, to restrain defendant's violation of covenant to use certain premises for residence purposes only. Complaint dismissed.

See, also, 159 App. Div. 207, 144 N. Y. S. 489.

Horton & Grandison, of Buffalo, for plaintiff.

J. E. Finegan, of New York City, and Frederic G. Dunham, of Albany, for defendants.

BROWN, J. [1] At the time defendants' predecessor, Abby L. Dunham, acquired her title to lot 36a, April 25, 1890, lots 41 and 42 were held by Charles J. Ritter, to whom conveyance was made March 31, 1890, by Thorne & Angell, by deed that did not contain restrictions, and lot 40 was owned by Charles E. Rislay, to whom conveyance was made March 31, 1890, by Thorne & Angell, and that did not contain restrictions. On that date, April 25 1890, all other lots in block A were owned by Thorne & Angell under restrictions. Charles J. Ritter and Charles E. Rislay were told by Thorne & Angell on

March 31, 1890, when they obtained their deeds, that all these lots were to be restricted property. Upon being notified by Thorne & Angell that their deeds did not contain restrictions, they conveyed these lots to Thorne & Angell, who, on April 26, 1890, the day after the conveyance of lot 36a to defendants' predecessor, reconveyed these lots, 40, 41, and 42, to Ritter and Rislay by deeds containing such restrictions.

May 6, 1890, Thorne & Angell conveyed lots 21 and 22 to Edward O'Grady by deed without restrictions. Thereafter a mortgage was executed on lot 23 without restrictions, which was foreclosed, and that lot is now owned without restrictions. These three lots, 21, 22 and 23, block A, are in the rear of defendants' lot, and can now be used for other than residence purposes. Thorne & Angell conveyed the west 6 feet of lot 35 to Abby L. Dunham November 26, 1890, with restrictions, at which time lots 21 and 22 were held by Edward O'Grady without restrictions. Thorne & Angell conveyed the east 54 feet of lot 35 to Abby L. Dunham June 24, 1891, with restrictions, at which time lots 21 and 22 were held by Edward O'Grady without restrictions. Thorne & Angell conveyed lot 37 to Leonard W. Crocker July 17, 1890, with restrictions, and on December 28, 1890, Crocker conveyed to Abby L. Dunham the east 2 feet of lot 37 with restrictions, at which time lots 21 and 22 were held by Edward O'Grady without restrictions.

Prior to May 6, 1890, the date of the O'Grady conveyances, there had been conveyed 8 lots of block A with restrictions, and since that date 21 lots of this block have been conveyed with restrictions. With those 21 lots there has been no mutuality of covenants to restrict for residence purposes lots 21 and 22 at any time, of which number defendants own lot 35 and part of lot 37. Defendant as owner of lot 36 has no right to enforce the restriction as to lots 40, 41, and 42, and as owner of lot 35 and part of lot 37 he has no such right as to lots 21 and 22. It appears that by reason of the execution of the mortgage on lot 23, without restrictions, prior to defendants' deed of lot 35 and part of lot 37, and the subsequent foreclosure sale, that as to lot 23 defendant, as owner of lot 35 and part of lot 37, has no power to enforce such restrictive covenant.

It thus appears that the alleged mutuality of covenant to restrict to residence purposes does not exist between lots 40, 41, and 42 and defendants' lot 36, nor between lots 21, 22, and 23 and defendants' lot 35 and part of lot 37. There are 6 lots in block A out of a total of 28, excluding defendants' 3 lots, from which the burden of restrictive covenants have been removed so far as defendants are concerned. Is it fair to assume that defendants' 3 lots are burdened with a mutual covenant, which, to be mutual, must be binding on 31 lots, when defendant is denied the benefit of such a covenant relative to 6 of the lots? It is very clear that the exemptions of lots 21, 22, and 23 from this restrictive covenant was not the result of inadvertence or carelessness. It is apparent that it was intentional. The fact that lots 21, 22, and 23 were deliberately conveyed without restrictions goes a long way to establish that there never was a general, mutual, uniform

plan of restriction to residence purposes binding upon block A, enforceable by any and all lot owners against each and all lot owners; at least it effectually rebuts whatever presumptions plaintiff can claim from the evidence.

[2] The validity of the covenant depends upon its being mutual. There is not a suggestion that the failure to restrict the use of lots 21, 22, and 23 was an inadvertence. There is nothing to indicate that there existed a uniform plan for the improvement of block A which was the subject of a mutual covenant, operative against each lot owner for the general benefit of each or all other lot owners. The existence of such a plan and mutual covenant depending as it does upon the way and manner of its execution by the insertion of restrictions in the several conveyances, the finding of 6 lots out of a total of 28, excluding defendants' 3 lots, that are not subject to restrictions that can be enforced by defendant is destructive of the essential mutuality, and the whole scheme as to block A fails of proof. To say that because 6 lots are freed from restrictions they are simply to be dropped from consideration, and the scheme and plan preserved as to the remaining 25 lots, is the arbitrary creation of a new plan that has been proved not to be uniform, not to be mutual, not to be binding on the whole block, and is without proof that it existed or ever was understood to exist. If it be true that the existence of a uniform plan with mutual covenants of restriction has not been proved as to block A, for like reason no such plan and covenant have been established for the entire tract. The conveyance of more than 40 lots by one method of computation, and 63 by another, freed from restrictions, is so destructive of the alleged uniform plan and mutual covenant that it cannot be found as a fact that such plan and covenant existed. If it ever existed, the release by the original grantors of such a large number of lots from the restrictions is such a breach of their covenant that all lots would be so conveyed that defendants could enforce a restriction against *all* lots, that it must be held that defendants can invoke such breach in this action as a defense.

The conclusion is reached that plaintiffs' complaint must be dismissed.